UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

| | |
|---|---|
| SANTOS BOBET,<br><br>                                 Plaintiff,<br><br>      -v-<br><br>THE CITY OF NEW YORK, New York City Police Department Officer ("P.O.") KELVIN PRADO (Shield No. 2604), and P.O. MARIA MENDEZ (Shield No. 5019),<br><br>                                Defendants. | **SECOND AMENDED**<br>**COMPLAINT**<br>**AND DEMAND**<br>**FOR A JURY TRIAL**<br><br>Index No. 14cv1396(WHP) |

------------------------------------------------------------------x

Plaintiff SANTOS BOBET, through his attorney David B. Rankin of Rankin & Taylor, PLLC as and for his second amended complaint, does hereby state and allege:

## **PRELIMINARY STATEMENT**

1. This is a civil rights action brought to vindicate plaintiff's rights under the First, Fourth, and Fourteenth Amendments of the Constitution of the United States, through the Civil Rights Act of 1871, *as amended*, codified as 42 U.S.C. § 1983.

2. Plaintiff SANTOS BOBET's rights were violated when officers of the NEW YORK CITY POLICE DEPARTMENT ("NYPD") unconstitutionally and without any legal basis arrested him without justification. By reason of defendants' actions, including their unreasonable and unlawful seizure of his person, he was deprived of his constitutional rights.

3. Plaintiff seeks an award of compensatory and punitive damages and attorneys' fees.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over federal claims pursuant to 28 U.S.C. §§ 1331, 1343(a)(3-4). This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of the First, Fourth, and Fourteenth Amendments to the Constitution of the United States.

5. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) in that plaintiff's claim arose in the Southern District of New York.

6. An award of costs and attorneys' fees is authorized pursuant to 42 U.S.C. §1988.

## PARTIES

7. Plaintiff SANTOS BOBET ("BOBET") was at all times relevant to this action a resident of the County of Bronx in the State of New York.

8. Defendant THE CITY OF NEW YORK ("CITY") is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Defendant CITY assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risks attach to the public consumers of the services provided by the NYPD.

9. NYPD Officer ("P.O.") KELVIN PRADO (Shield No. 2604) ("PRADO"), and P.O. MARIA MENDEZ (Shield No. 5019) ("MENDEZ"), hereinafter ("the individual defendants") are and were at all times relevant herein, officers, employees and agents of the NYPD.

10. The individual defendants are being sued herein in their individual capacities.

11. At all times relevant herein, the individual defendants were acting under color of state law in the course and scope of their duties and functions as agents, servants, employees and officers of NYPD and otherwise performed and engaged in conduct incidental to the performance of

their lawful functions in the course of their duties. They were acting for and on behalf of the NYPD at all times relevant herein, with the power and authority vested in them as officers, agents and employees of the NYPD and incidental to the lawful pursuit of their duties as officers, employees and agents of the NYPD.

## STATEMENT OF FACTS

12. Mr. BOBET was falsely arrested on September 28, 2012, at approximately 8:55 p.m., by the individual defendants at or about the northeast corner of Whitlock Avenue and Westchester Avenue, in the County of Bronx and State of New York.

13. Mr. BOBET approached the Whitlock Avenue "6" Subway station, when he observed the individual defendant officers handcuff another individual, Juan Carrasco.

14. Mr. BOBET began to videotape the arrest with a handheld video camera.

15. An individual defendant told Mr. BOBET in sum and substance that he needed to pay his fare or stop videotaping the encounter.

16. Mr. BOBET promptly used his metrocard to pay a fare at the turnstiles and continued to record the encounter.

17. Nevertheless, an individual defendant, grabbed the video camera from Mr. BOBET's hands.

18. The individual defendants then, upon information and belief, arrested Mr. BOBET in retaliation for his First Amendment protected activity of recording a civilian-police encounter.

19. An individual defendant handcuffed Mr. BOBET tightly, with one hand facing outward and one inward, causing pain and injury.

20. Upon information and belief, after Mr. BOBET's arrest, the individual defendants deleted the video footage Mr. BOBET had taken, documenting the arrest of Mr. Carrasco and the interaction between Mr. BOBET and the individual defendants.

21. Mr. BOBET was charged with Obstructing Governmental Administration even though he did not interfere with the individual defendants during the incident.

22. The charge in the case was adjourned in contemplation of dismissal on December 17, 2013.

23. Mr. BOBET spent many hours in defendants' custody as a result of his arrest.

24. As a result of his handcuffing and arrest, Mr. BOBET experienced pain, suffering, mental anguish, and humiliation.

**FIRST CLAIM FOR RELIEF**
**DEPRIVATION OF RIGHTS**
**UNDER THE UNITED STATES CONSTITUTION THROUGH 42 U.S.C. § 1983**
**(Against all Defendants)**

25. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

26. Defendants, under color of state law, subjected the plaintiff to the foregoing acts and omissions, thereby depriving plaintiff of his rights, privileges and immunities secured by the First, Fourth, and Fourteenth Amendments to the United States Constitution, including, without limitation, deprivation of the following constitutional rights: (a) freedom from unreasonable seizure of his person; (b) freedom from arrest without probable cause; (c) freedom from false imprisonment; (d) freedom from the lodging of false charges against him by police officers; (e) freedom from having police officers fabricate evidence against him; and (f) freedom from retaliatory arrest, under the First and Fourteenth Amendments.

27. Defendants' deprivation of plaintiff's constitutional rights resulted in the injuries and damages set forth above.

**SECOND CLAIM**
*MONELL* **CLAIM AGAINST DEFENDANT CITY – 42 U.S.C. § 1983**
**(Against the City of New York)**

28. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

29. The individual defendants' acts and omissions described above were carried out pursuant to the CITY's overlapping customs and practices which were in existence on September 28, 2012 and were engaged in with the full knowledge, consent, and cooperation and under the supervisory authority of the CITY and its agency, the NYPD.

30. The acts complained of were carried out by the individual defendants in their capacities as police officials pursuant to customs, policies, usages, practices, procedures and rules of the CITY and the NYPD, all under the supervision of ranking officers of the NYPD.

31. The aforementioned custom and practice of the CITY and the NYPD include, but are not limited to making retaliatory arrests against persons who lawfully photograph, document or record police activity.

32. The existence of aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct, as documented in below:

   **Journalists and Photographers**

   a. **May 30, 2007 / Robert Carneval / <u>Carneval v. City of New York</u>, 08 CV 9993 (DAB)(AJP)(S.D.N.Y.)**
   A Manhattan photographer, Robert Carneval, was arrested after filming NYPD officers in the East Village as they seized and loaded bikes, which had been locked to lampposts and parking meters, into a police van.  After the photographer began filming and discussing the removals with another man, a plainclothes officer asked him for identification. When the photographer stated he had the right to film, the officer led him to a police car, examined his ID, then arrested him. Colin Moynihan, *City Settles with Two Arrested After Police Confrontation*, The New York Times (March 31, 2010), http://cityroom.blogs.nytimes.com/2010/03/31/city-settles-with-pair-arrested-after-police-confrontation/.

b. **November 2011 / Karen Matthews, Seth Wenig, Matthew Lysiak, Patrick Hedlund, Paul Lomax and Julie Walker**
In November of 2011, at least six journalists were arrested while covering the raid and eviction of Occupy Wall Street protesters from Zuccotti Park. Thirteen news organizations in New York City lodged complaints about the treatment of journalists and the suppression of coverage of the event, and ten press clubs, unions, and other groups called for an investigation into the police conduct at issue. CBS New York / AP, *Several Journalists Among Those Arrested During Zuccotti Park* Raid, CBS New York (November 15, 2011) http://newyork.cbslocal.com/2011/11/15/officials-journalists-among-those-arrested-during-zuccotti-park-raid/; Brian Stelter, *News Organizations Complain About Treatment During Protests*, The New York Times: Media Decoder (November 21, 2011) http://mediadecoder.blogs.nytimes.com/2011/11/21/news-organizations-complain-about-treatment-during-protests/.

c. **November 15, 2011 / Timothy Fitzgerald / <u>Rodriguez v. Winski</u>, 12 CV 3389 (NRB) (S.D.N.Y.)**
On or about November 15, 2011, in Zucotti Park, a publicly accessible open space, several police officers grabbed Timothy Fitzgerald, a citizen reporter who was documenting protest activities and police response to same, pulled him to the ground and arrested him.

d. **August 4, 2012 / Robert Stolarik**
Photographer Robert Stolarik, who worked regularly for The New York Times for more than a decade, was charged with obstructing government administration and resisting arrest after taking photographs of a brewing street fight at McClellan Street and Sheridan Avenue in the Bronx. Mr. Stolarik was taking photographs of the arrest of a teenage girl about 10:30 p.m., when a police officer instructed him to stop doing so. Mr. Stolarik said he identified himself as a journalist for The New York Times and continued taking pictures. A second officer appeared, grabbed his camera and "slammed" it into his face, he said. The arresting officer was later indicted for falsifying statements surrounding Ms. Stolarik's arrest. Russ Buettner, *Officer Is Indicted on Charges of Lying About Photographer's Arrest,* The New York Times (Aug. 26, 2013), http://www.nytimes.com/2013/08/27/nyregion/officer-is-indicted-on-charges-of-lying-about-photographers-arrest.html.

e. **September 17, 2012 / Christopher Faraone / <u>Faraone v. City of New York et al</u>, 13 CV 09074 (TPG) (S.D.N.Y.)**
Christopher Faraone, a journalist, was photographing a public demonstration at One Chase Manhattan Plaza when NYPD officers tackled, battered and arrested him. One of the officers directed him to cease his reporting activities within New York City.

f. **September 15-17, 2012 / Julia Reinhart, Charles Meacham and John Knefel**
Five photojournalists reporting on Occupy Wall Street protesters were arrested in course of their reporting. One photographer was arrested after attempting to take a picture of an officer giving a dispersal order on a sidewalk. Another was forced to the

ground and detained, while another was shoved and blocked from taking a photo by a Lieutenant in the NYPD's Legal Bureau. Christopher Robbins, *NYPD's pattern of harassing, arresting journalists continues*, Gothamist (Sept. 19, 2012) http://gothamist.com/2012/09/19/nypds_harassment_of_journalists_con.php.

g. **December 12, 2011 & March 15, 2012 / Paul Sullivan, John Knefel and Justin Wedes / Rodriguez v. Winski, 12 CV 3389 (NRB) (S.D.N.Y.)**
On December 12, 2011, Paul Sullivan, John Knefel and Justin Wedes, citizen reporters who were documenting protest activities and police response to same at the Winter Garden, a publicly accessible open place, were grabbed, pulled to the ground and arrested without warning or probable cause by the NYPD. On March 15, 2012, Mr. Wedes was again threatened with arrest for the same legal activity.

h. **March 2012 / Unknown**
In March of 2012, a cameraman from WABC-TV was struck by an officer at crime scene for unknown reasons. Carlos Miller, *NYPD Cop Assaults News Videographer At Crime Scene*, Photography Is Not A Crime (March 22, 2012) http://photographyisnotacrime.com/2012/03/22/nypd-cop-assaults-news-videographer-at-crime-scene/

i. **November 27, 2012 / Angel Zayas / Zayas v. Kelly, 13 CV 08808 (JMF) (S.D.N.Y.)**
On November 27, 2012, a freelance photographer, Angel Zayas, was arrested for photographing officers effect an unrelated arrest in Grand Central Terminal. Daniel Beekman, *Photographer trying to shoot stop and frisk sues NYC over police harassment*, New York Daily News (December 13, 2013) http://www.nydailynews.com/news/justice-story/photog-shooting-frisking-sues-nyc-harassment-article-1.1546548

j. **January 16, 2013 / Shimon Gifter**
A photographer from VIN News, a media outlet for the Orthodox Jewish community, had his camera seized and thrown to the ground, his memory card erased, and his Blackberry damaged after photographing officers stopping and frisking several young men. The photographer was also handcuffed and held up against a wall before being released with a warning. Boruch Shubert, *Police Brutality in Midwood?*, The Jewish Voice (January 24, 2013) http://jewishvoiceny.com/index.php?option=com_content&view=article&id=2978:police-brutality-in-midwood&catid=106:international&Itemid=289; Sandy Eller, *Charedi Photographer Claims Handcuffed By NYPD After Videotaping Flatbush Police Stop*, Voz Iz Neias? (January 20, 2013). http://www.vosizneias.com/122118/2013/01/20/brooklyn-ny-charedi-photographer-claims-handcuffed-by-nypd-after-videotaping-flatbush-police-stop/.

k. **April 19, 2013 / Justin Thomas / Thomas v. City of New York, 13 CV 6139 (SJ) (LB)(E.D.N.Y.)**
A film student was arrested filming the exterior of the 72nd Precinct on April 19,

2013. Officers confiscated the student's cell phone, camera, and the camera's memory card, as well as his friend's memory card from a camera.  Officers failed to remove the correct memory card from the friend's camera, however, leaving evidence of the encounter.

**Concerned Citizens**

l. **February 9, 2005 / Lumumba Bandele, Djibril Toure and David Floyd / Bandele v. The City of New York, 07 CV 3339 (MGC)(S.D.N.Y.)**
Lumumba Bandele, Djibril Toure and David Floyd were arrested while videotaping two arrests in Bedford-Stuyvesant, Brooklyn, on February 9, 2005. "In trying to stop the police from violating the rights of others, they had their rights violated," said Kamau Franklin, a lawyer with the Center for Constitutional Rights. *Metro Briefing: New York; Manhattan: Lawsuit Against The Police*, The New York Times (April 27, 2007), http://query.nytimes.com/gst/fullpage.html?res=9C02E2DD123EF934A15757C0A9619C8B63.

m. **September 29, 2009 / Dennis Flores / Mesa v. City of New York, 09 CV 10464 (JPO) (S.D.N.Y.)**
On September 29, 2009, Dennis Flores was arrested when he photographed NYPD officers using excessive force to disperse a crowd at a festival in the Bronx. At one point prior to Flores' arrest, an NYPD officer stated it was "illegal to photograph police."

n. **October 17, 2010 / Anibal Ortiz / Ortiz v. City of New York, 11 CV 7919 (JMF) (S.D.N.Y.)**
On October 17, 2010, Anibal Ortiz was arrested after he began recording NYPD officers, who asked him for identification, with a cell phone camera.

o. **July 11, 2011 / Caroline Stern and George Hess / Stern v. City of New York, 12 CV 04863 (SAS) (S.D.N.Y)**
On July 11, 2011, Caroline Stern was arrested and her boyfriend George Hess, was tackled and arrested after he began video recording an encounter with officers in a subway station. Kathianne Boniello, *Couple handcuffed, jailed for dancing on subway platform: lawsuit*, The New York Post (July 8, 2012) http://nypost.com/2012/07/08/couple-handcuffed-jailed-for -dancing-on-subway-platform-lawsuit/

p. **April 27, 2012 / John Runnells / Runnells v. City of New York, 13 CV 2904 (KBF) (S.D.N.Y.)**
On April 27, 2012, John Runnells' camera was seized and its footage erased after he video recorded a police traffic checkpoint. Mr. Runnells continued recording the officers after his camera was returned, and he was subsequently arrested. Once again, his camera was seized and the footage deleted.

q. **June 5, 2012 / Hadiyah Charles / <u>Charles v. City Of New York</u>, 12 CV 06180 (SLT) (SMG) (E.D.N.Y)**
On June 5, 2012 a woman was pushed and arrested for using her phone to video record the stop-and-frisk of three unrelated young men on a public sidewalk. Rocco Parascandola, *Woman suing NYPD for wrongful arrest discovers that a key piece of evidence has mysteriously vanished from the Brooklyn stationhouse*, New York Daily News (October 17, 2013) http://www.nydailynews.com/new-york/brooklyn/brooklyn-precinct-log-book-mystery-article-1.1487721

r. **August 2012 / Unknown**
In August of 2012, a man was threatened with arrest for filming outside about 300 feet away from the security checkpoint at One Police Plaza. Carlos Miller, *NYPD Cop Fails at Intimidating Man From Video Recording Police Headquarters*, Photography Is Not A Crime (August 17, 2012)
http://photographyisnotacrime.com/2012/08/17/nypd-cop- fails-at-intimidating-man-from-video- recording-police-headquarters/

s. **January 10, 2012 / Justin Sullivan / <u>Rodriguez v. Winski</u>, 12 CV 3389 (NRB) (S.D.N.Y.)**
On January 10, 2012, Justin Sullivan was arrested for filming an Occupy Wall Street protest at Grand Central Terminal and his camera was confiscated. Later, Mr. Sullivan returned to the police precinct at the terminal to retrieve his camera and he was re-arrested. A witness reported an officer destroyed Mr. Sullivan's camera.

t. **March 2012 / Unknown**
In March of 2012, an individual video recording officers beating another man with batons was told to leave the scene and threatened with pepper spray.
Carlos Miller, *NYPD Takes Break From Beating Man To Threaten Videographer With Pepper Spray* (March 18, 2012)
http://photographyisnotacrime.com/2012/03/18/nypd-takes-break-from-beating-man-to-threaten-videographer-with-pepper-spray/.

u. **March 13, 2013 / Ed Garcia Conde**
Ed Carcia Conde was arrested on March 13, 2013 after he used his phone to video record a police officer's interaction with another man. Ben Yakas, *Video: Bronx Man Hauled To Jail For Exercising Right To Videotape Cops*, Gothamist (March 16, 2013) http://gothamist.com/2013/03/16/video_bronx_man_hauled_to_jail_for.php.

v. **May 16, 2013 / Christina Gonzalez and Matthew Swaye**
Two Harlem residents were arrested after they filmed NYPD officers conduct stop-and-frisks at a car checkpoint. Christina Gonzalez and Matthew Swaye said they were returning from a Bronx mall at about 10:30 p.m. when they noticed several vehicles stopped and Gonzalez took out her camera to begin filming.  Jeff Mays, *'Professional Agitators' on NYPD 'Wanted' Flier Arrested After Filming Stop*, DNA Info (May 21, 2013), http://www.dnainfo.com/new-york/20130521/central-harlem/professional-

      agitators-on-nypd-wanted-flier-arrested-after-filming-stop.

    w. **August 26, 2013 / Jonathan Harris**
       NYPD officers arrested a Bronx teenager, Jonathan Harris, after he was filming the officers attack and threaten two young girls in a Bronx park. The teenager told the officers to leave the girls alone and began filming them with his phone. The officers began chasing him, tackled him and punched him before arresting him. Jennifer Cunningham, *Teens say they were beaten by cops in Bronx park*, New York Daily News (Aug. 29, 2013), http://www.nydailynews.com/new-york/bronx/teens-mauled-cops-article-1.1440394#ixzz2eVh68jgw.

    x. **September 19, 2013 / Sean Basinski / <u>Basinski v. The City of New York</u>, 14 CV 1057 (LTS) (S.D.N.Y.)**
       On September 19, 2013, a lawyer, Sean Basinski was arrested while using a phone to records police during a rally in front of Midtown North Precinct police station on West 54th Street. Colin Moynihan, *Street Vendors Protest Treatment by Police*, The New York Times (October 2, 2013), http://www.nytimes.com/2013/10/03/nyregion/street-vendors-protest-treatment-by-police.html?_r=0.

33. All of the foregoing acts by defendants deprived the plaintiff of federally protected rights, including, but limited to, the constitutional rights enumerated in paragraph 26.

34. Defendant CITY knew or should have known that the acts alleged herein would deprive the plaintiff of his rights, in violation of the First, Fourth, and Fourteenth Amendments to the United States Constitution.

35. Defendant CITY is directly liable and responsible for the acts of the individual police defendants because it repeatedly and knowingly failed to properly supervise, train, instruct, and discipline them and because it repeatedly and knowingly failed to enforce the rules and regulation of the CITY and NYPD, and to require compliance with the Constitution and laws of the United States.

36. Despite knowledge of such unlawful <u>de facto</u> policies, practices and/or customs, these supervisory and policy-making officers and officials of the NYPD and the CITY, including then-Commissioner KELLY, have not taken steps to terminate these policies, practices

and/or customs, do not discipline individuals who engage in such polices, practices and/or customs, or otherwise properly train police officers with regard to the constitutional and statutory limits on the exercise of their authority, and instead sanction and ratify these policies, practices and/or customs through their active encouragement of, deliberate indifference to and/or reckless disregard of the effect of said policies, practices and/or customs upon the constitutional rights of persons in the City of New York.

37. The aforementioned CITY policies, practices and/or customs of failing to supervise, train, instruct and discipline police officers and encouraging their misconduct are evidenced by the police misconduct detailed herein.  Specifically, pursuant to the aforementioned CITY policies, practices and/or customs, the individual defendants felt empowered to exercise unreasonable and wholly unprovoked force against plaintiff, arrest plaintiff without probable cause and then fabricate and swear to a false story to cover up their blatant violations of plaintiff's constitutional rights. Pursuant to the aforementioned CITY policies, practices and/or customs, defendants failed to intervene in or report other defendants' violation of plaintiff's rights or subsequent perjury.

38. Plaintiff's injuries were a direct and proximate result of the defendant CITY and the NYPD's wrongful de facto policies and/or well-settled and widespread customs and practices and of the knowing and repeated failure of the defendant CITY and the NYPD to properly supervise, train and discipline their police officers.

39. The actions of the individual police defendants resulted from and were taken pursuant to the following de facto policies and/or well-settled and widespread customs and practices of the CITY, which implemented by agents or employees of the NYPD, of employing wholly unprovoked and excessive force.

40. Defendants, collectively and individually, while acting under color of state law, acquiesced in a pattern of unconstitutional conduct by subordinate police officers and were directly responsible for the violation of the plaintiff's constitutional rights.

## **JURY DEMAND**

41. Plaintiff demands a trial by jury in this action on each and every one of his damage claims.

WHEREFORE, plaintiff demands judgment against the defendants individually and jointly and prays for relief as follows:

a. That he be compensated for violation of his constitutional rights, pain, suffering, mental anguish, and humiliation;

b. That he be awarded punitive damages against the individual defendants;

c. That he be compensated for attorneys' fees and the costs and disbursements of this action; and

d. For such other further and different relief as to the Court may seem just and proper.

Dated:      New York, New York
            June 20, 2014

                                                Respectfully submitted,

                                                  /s/
By:      _____
         David B. Rankin
         Rankin & Taylor, PLLC
         *Attorneys for the Plaintiff*
         11 Park Place, Suite 914
         New York, New York 1007
         Ph: 212-226-4507